IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                                                        No. CR 11-2012 JB

JONATHON SALAZAR,

       Defendant.

## MEMORANDUM OPINION AND ORDER

      **THIS MATTER** comes before the Court on: (i) the United States' Sentencing Memorandum, filed February 7, 2012 (Doc. 31)("USA Sentencing Memorandum"); and (ii) the Defendant's Sentencing Memorandum and Request for a Variance, filed April 2, 2012 (Doc. 35)("Salazar Sentencing Memorandum"). The Court held a sentencing hearing on April 11, 2012. The primary issues are: (i) whether the Court should accept the parties' stipulation that a 4-level enhancement under U.S.S.G. § 2K2.1(b)(6) does not apply to the facts of this case; (ii) whether the Court should depart downward based on Defendant Jonathon Salazar's family ties and responsibilities; and (iii) whether the Court should vary downward on Salazar's sentence. Given that Plaintiff United States of America has identified legitimate evidentiary problems that would potentially prevent it from proving that an enhancement under U.S.S.G. § 2K2.1(b)(6) applies, the Court will accept the parties' stipulation that the enhancement does not apply. Because Salazar has family ties and responsibilities that take his case out of the heartland of cases, the Court will depart downward 3 levels on his offense level. The Court will not vary downward on his sentence beyond the parties' stipulated downward variance, because the Court believes the factors in 18 U.S.C. § 3553(a) do not counsel in favor of a greater variance.

**FACTUAL BACKGROUND**

On August 18, 2010, officers from the Albuquerque Police Department "were dispatched to the northwest part of Albuquerque, New Mexico in reference to shots fired." Presentence Investigation Report ¶ 8, at 4, disclosed December 8, 2011 ("PSR"). "As officers approached the area, they observed a male individual later identified as the defendant, Jonathan Salazar, quickly enter the residence at 519 Mainsail northwest and close the door." PSR ¶ 8, at 4. Officers patted down Salazar for their safety and found a knife on Salazar. See PSR ¶ 8, at 4.

While the officers were patting down Salazar, "a female, identified as Erica Glover, exited the same home and appeared to be hysterical." PSR ¶ 9, at 4. She "blurted out to officers on scene that she had caught two unknown males breaking into her vehicles and ran outside to confront them when they began to shoot at her." PSR ¶ 9, at 4. "Glover advised she then returned fire with her own weapon she had brought outside with her." PSR ¶ 9, at 4. Glover stated that her weapon was in a drawer in her room. See PSR ¶ 9, at 4. After officers obtained the gun, they learned from Glover that Salazar had a felony conviction. See PSR ¶ 10, at 4-5.

During further interviews, officers learned that Salazar "too had fired at the male individuals." PSR ¶ 11, at 5. Salazar asserted that he fired the weapon in self-defense to protect Glover once the unknown males began to fire at her. See PSR ¶ 19, at 6. Salazar indicated that he had put the weapon in a dresser in the home. See PSR ¶ 11, at 5. Officers located two weapons in the home, a ".40 caliber Glock" and a ".357 caliber" Glock. PSR ¶ 12, at 5. "According to Glover, she fired the .40 caliber Glock and Salazar fired the .357 caliber." PSR ¶ 12, at 5.

Salazar pled guilty to a felony count of possession with intent to distribute marijuana in March 2002. See PSR ¶ 30, at 9. He pled guilty to a felony charge of aggravated battery with a deadly weapon in 2003. See PSR ¶ 31, at 9. In March 2011, he pled guilty to a state felony charge

of possession of a firearm or destructive device by felony.  See PSR ¶ 32, at 10.  This felony conviction for possession of a firearm or destructive device arose out of the same underlying conduct that is the subject of the charges in this case.  See PSR ¶ 32, at 10.  Salazar received a sentence of 18-months probation.  See PSR ¶ 32, at 10.

Salazar "has been in a common-law relationship with Erica Glover . . . since 2003 which remains intact."  PSR ¶ 41, at 12.  They have a child named Fernando, who is seven years old.  See PSR ¶ 41, at 12.  Fernando "was born with a congenital genetic disorder identified as 1p36 deletion syndrome from his mother's side."  PSR ¶ 41, at 12.  "As a result of the disorder, Fernando is developmentally disabled and requires constant care."  PSR ¶ 41, at 12.  He has vision and hearing problems, and attends a special education program.  See PSR ¶ 41, at 12.  Salazar informed the United States Probation Office ("USPO") that "his son suffers from behavioral problems as a result of the disorder and it is difficult to take him out in public because he has screaming episodes."  PSR ¶ 41, at 12.  Glover is the primary caretaker for Fernando.  See PSR ¶ 41, at 12.

## PROCEDURAL BACKGROUND

Salazar, pursuant to a Plea Agreement, filed October 18, 2011 (Doc. 27), pled guilty to the Indictment, filed July 27, 2011 (Doc. 1), charging him with a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), that being felon in possession of a firearm and ammunition.  The United States agrees to "recommend that the Defendant receive a downward variance to account for the time between the date of the offense, August 18, 2010, and the date of the initial setting of the Defendant's sentencing hearing."  Plea Agreement ¶ 8, at 3.  The United States agrees to "recommend the lower end of the imprisonment range of the appropriate sentencing guideline."  Plea Agreement ¶ 11, at 5.  The parties agree to a 3-level reduction on Salazar's offense level "so long as the Defendant continues to accept responsibility for the Defendant's criminal conduct."  Plea Agreement ¶ 11, at 4.  The

parties agree that the United States does not have sufficient evidence to prove that Salazar "possessed a firearm in connection with a felony offense under U.S.S.G. § 2K2.1(b)(6)" and that an enhancement under that guideline does not apply. Plea Agreement ¶ 11, at 5. The parties reserve the right to "assert any position or argument with respect to the sentence to be imposed" other than with respect to the stipulations contained in the Plea Agreement. Plea Agreement ¶ 11, at 5-6. Salazar "waives the right to appeal" his "conviction and any sentence at or under the maximum statutory penalty authorized by law," and his right to collaterally attack his conviction "except on the issue of counsel's ineffective assistance in negotiating or entering this plea or this waiver." Plea Agreement ¶ 15, at 7.

The USPO disclosed a PSR for Salazar on December 8, 2011. In the PSR, the USPO calculates Salazar's total offense level to be 21. See PSR ¶ 28, at 8. The PSR applies a base offense level of 24 pursuant to U.S.S.G. § 2K2.1(a)(2) based on the defendant committing "any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." PSR ¶ 21, at 7. The USPO notes that a 4-level enhancement under U.S.S.G. § 2K2.1(b)(6) is appropriate given that "the defendant admitted he fired the gun at the two individuals who were breaking into the vehicles," thus establishing that he committed "Aggravated Battery with a Deadly Weapon." PSR ¶ 22, at 8. The PSR, nevertheless, does not apply this 4-level enhancement based on the parties' agreement in the Plea Agreement. See PSR ¶ 22, at 8. The PSR includes a 3-level reduction under U.S.S.G. § 3E1.1 based on Salazar's acceptance of responsibility. See PSR ¶ 27, at 8. The PSR lists his criminal history category as II, based on 2 criminal history points. See PSR ¶ 33, at 10. The PSR calculates that an offense level of 21 and a criminal history category of II results in a guideline imprisonment range of 41 to 51 months. See PSR ¶ 62, at 19. The PSR recommends a departure based on Salazar's family ties and

responsibilities given that Salazar and Glover "have a seven year old special needs child" named Fernando "who requires round the clock care." PSR ¶¶ 75-76, at 21. The PSR notes that, "[a]lthough family members provide some assistance to Ms. Glover, it is limited because of the difficulty in caring for the defendant's son." PSR ¶ 75, at 21. The PSR states that, "[a]ccording to Ms. Glover, Fernando is not potty trained, cannot feed himself and has difficulty communicating his needs." PSR ¶ 75, at 21. Fernando reportedly "often has temper tantrums and causes injury to himself." PSR ¶ 75, at 21. Glover informed the USPO that "she is only able to leave the house when she attends school, but otherwise is at home because it is difficult to take Fernando out in public as he has screaming episodes and doesn't like going to certain places." PSR ¶ 75, at 21. "Glover indicated Fernando will never be able to function on his own and will always require their care." PSR ¶ 75, at 21. The USPO notes that Salazar takes on various responsibilities in caring for Fernando, including providing financial support for Glover and Fernando. See PSR ¶ 76, at 21.

The United States filed its USA Sentencing Memorandum on February 7, 2012. See Doc. 31. It notes that, while the United States Department of Justice does not normally prosecute a defendant when he faces charges for the same underlying conduct in state court, a waiver of that policy was obtained in this case "based on the nature of Defendant's possession -- that he actually discharged his firearm -- and Defendant's criminal history." USA Sentencing Memorandum at 2-3. The United States notes that "[t]he parties reached a plea that included the government's non-binding approval as to a downward variance for the time that had elapsed between the date of the offense and the date of sentencing." USA Sentencing Memorandum at 3. Given the likely downward variance in this case based on that agreement, the United States "approximates that its recommended sentence is thereby 23 months imprisonment." USA Sentencing Memorandum at 3. The United States notes that it is not possible to "fully ascertain[]" the "events surrounding the shots

fired in front of Defendant's residence," but noted that the evidence appears to correspond with a conclusion that the individuals breaking into the vehicle did not fire shots at Glover or Salazar. USA Sentencing Memorandum at 4.

Salazar filed his Salazar Sentencing Memorandum on April 2, 2012. See Doc. 35. He asks the Court to consider the mitigating circumstances surrounding the shooting, including that there was a burglary and shots fired at his girlfriend. See Salazar Sentencing Memorandum at 5-6. He notes that he and his girlfriend have been "repeatedly victimized" as a result of events similar to the car burglary. Salazar Sentencing Memorandum at 6-8. He notes that he has performed well on pretrial release. See Salazar Sentencing Memorandum at 9-10. He asks the Court to consider the high level of care his child, Fernando, requires. See Salazar Sentencing Memorandum at 10. He asserts that, based on Fernando's circumstances, a departure on the basis of family ties and responsibilities is warranted. See Salazar Sentencing Memorandum at 10-12, 14. He asks the Court for a sentence of probation in part because he has already received a conviction for the underlying criminal conduct in this case in state court and will receive a second felony conviction in this federal case for the same conduct. See Salazar Sentencing Memorandum at 13-14.

At the sentencing hearing, the United States asserted that it would recommend a 21-month sentence based on approximately 19 months and 7 days passing since August 18, 2010 -- the date of the offense. See Transcript of Hearing at 4:2-9 (taken April 11, 2012)(Walsh)("Tr.").[1] The Court asked the parties to offer a basis for their stipulation that a 4-level enhancement under U.S.S.G. § 2K2.1(b)(6) does not apply. See Tr. at 5:2-14 (Court). The United States noted that, while the issue was close, it did not believe that it had sufficient evidence available to it to support, by a

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

preponderance of the evidence, the enhancement. See Tr. at 5:15-6:4 (Walsh, Court). Salazar emphasized that the evidence would support his assertion that he fired his weapon to defend Glover. See Tr. at 6:7-17 (Davis). The Court then accepted the parties' stipulation that this enhancement does not apply. See Tr. at 6:20-7:10 (Court). The United States acknowledged that the facts in the PSR regarding Salazar's family ties and responsibilities are accurate, but opposed a departure on this basis. See Tr. at 7:11-20 (Walsh). After the Court granted a downward departure of 3 offense levels based on family ties and responsibilities, the United States asserted that its sentencing recommendation would be 10-months imprisonment. See Tr. at 9:18-10:12 (Court, Walsh). It later clarified that it was requesting 11-months incarceration. See Tr. at 16:23-17:6 (Walsh).

## LAW REGARDING U.S.S.G. § 2K2.1(b)(6)

U.S.S.G. § 2K2.1(b)(6) provides a 4-level enhancement to a defendant's base offense level for a sentence under U.S.S.G. § 2K2.1 "if the defendant used or possessed any firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6). Application note 14 to U.S.S.G. § 2K2.1 specifies that the use or possession is "in connection with" a different felony "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense." U.S.S.G. § 2K2.1, cmt. n.14(A).

The United States Court of Appeals for the Tenth Circuit has held on several occasions that physical proximity between a weapon and narcotics can be sufficient to satisfy the requirements of U.S.S.G. § 2K2.1(b)(6). See, e.g., United States v. Bunner, 134 F.3d 1000, 1006 (10th Cir. 1998); United States v. Gomez-Arrellano, 5 F.3d 464, 467 (10th Cir. 1993). In United States v. Bunner, the Tenth Circuit explained how physical proximity could establish a nexus between a handgun and a drug trafficking offense: "Handguns are widely recognized as a tool of the drug dealers trade. Accordingly, a weapon's proximity to narcotics may be sufficient to provide the nexus necessary

to enhance a defendant's sentence under § 2K2.1(b)(5)."[2]  134 F.3d at 1006.

The United States Court of Appeals for the Eighth Circuit has noted that, when a person ventures out into public with a firearm and even a small amount of drugs, "there are many ways in which the weapon can facilitate the drug offense and dangerously embolden the offender." United States v. Regans, 125 F.3d 685, 687 (8th Cir. 1997).  The Eighth Circuit has also held that a firearm facilitates or has the potential to facilitate felony-drug possession in the same manner as felony-drug trafficking -- by protecting a defendant or his drugs.  See United States v. Bell, 310 F.3d 604, 605-606 (8th Cir. 2002)(per curiam).  The Tenth Circuit reached a similar conclusion in an unpublished opinion.  See United States v. Fent, 199 F.App'x 724, 727 (10th Cir. 2006)(unpublished)(holding enhancement applied where the defendant possessed firearm in connection with possessing methamphetamine).

In United States v. Fent, a deputy sheriff pulled the defendant over for speeding, and then arrested him after he failed to produce a driver's license or proof of insurance, and a database check of his name and social security number revealed his license was suspended.  See 199 F.App'x at 725-26.  The deputy impounded the defendant's truck, and discovered a small amount of methamphetamine and a firearm in a black bag in the defendant's truck during an inventory search.  See id. at 726.  The defendant was found guilty after a jury trial of being a felon in possession of a firearm, but was never charged with any drug offense.  See id.  Nonetheless, the district court found, by a preponderance of the evidence, that the firearm was possessed in connection with felony possession of methamphetamine.  See id. at 727.  As the district court noted, "'the availability of the gun in such close proximity to the methamphetamine was sufficient evidence of a connection

---

[2]U.S.S.G. § 2K2.1(b)(5) is now U.S.S.G. § 2K2.1(b)(6).  See U.S.S.G. § 2K2.1.

between the firearm and the possession of methamphetamine, which is a felony offense in the state of Oklahoma.'" Id. (quoting with approval the district court). The Tenth Circuit affirmed.

There is no requirement that a certain amount of narcotics be recovered for the enhancement under U.S.S.G. § 2K2.1(b)(6) to apply. See United States v. Condren, 18 F.3d 1190, 1999 (5th Cir. 1994)(holding that the 4-level enhancement "may be based on any felony, including, as here, felony possession of a small amount of drugs"); United States v. Cunningham, No. 06-2493, 2008 WL 6049940, at *8 (D.N.M. Oct. 29, 2008)(Browning, J.). Accordingly, courts have applied the 4-level enhancement in cases where small amounts of narcotics were recovered. See, e.g., United States v. Washington, 340 F.3d 222, 231 (5th Cir. 2003); United States v. Green, 255 F.App'x 473, 474 (11th Cir. 2007)(unpublished)(upholding enhancement for having firearm and small amount of drugs for personal use); United States v. Moran-Paz, 35 F.App'x 93, 93-94 (4th Cir. 2002)(unpublished)(upholding enhancement based upon finding that defendant carried firearm to protect his small amount of drugs).

An enhancement under U.S.S.G. § 2K2.1(b)(6) may be applied even though the felony in connection with which the firearm is possessed was not an offense for which the defendant was convicted. See United States v. Gambino-Zavala, 539 F.3d 1221, 1230 n.3 (10th Cir. 2008). In United States v. Magallanez, 408 F.3d 672 (10th Cir. 2005), the Tenth Circuit held that, even after United States v. Booker, 543 U.S. 220 (2005), as long as the guidelines are considered advisory, facts relevant to sentencing still need be proved only by a preponderance of the evidence. See United States v. Magallanez, 408 F.3d at 684-685. See also United States v. Dalton, 409 F.3d 1247, 1252 (10th Cir. 2005)("Booker therefore does not render judicial fact-finding by a preponderance of the evidence per se unconstitutional.").

## LAW REGARDING U.S.S.G. § 5H1.6

U.S.S.G. § 5H1.6 provides that "family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted." U.S.S.G. § 5H1.6. The application note to this guideline recognizes that a court should consider the following factors when deciding whether to grant a departure under this guideline:

    (A)    In determining whether a departure is warranted under this policy statement, the court shall consider the following non-exhaustive list of circumstances:

        (i)    The seriousness of the offense.

        (ii)    The involvement in the offense, if any, of members of the defendant's family.

        (iii)    The danger, if any, to members of the defendant's family as a result of the offense.

    (B)    . . . A departure under this policy statement based on the loss of caretaking or financial support of the defendant's family requires, in addition to the court's consideration of the non-exhaustive list of circumstances in subdivision (A), the presence of the following circumstances:

        (i)    The defendant's service of a sentence within the applicable guideline range will cause a substantial, direct, and specific loss of essential caretaking, or essential financial support, to the defendant's family.

        (ii)    The loss of caretaking or financial support substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant. For example, the fact that the defendant's family might incur some degree of financial hardship or suffer to some extent from the absence of a parent through incarceration is not in itself sufficient as a basis for departure because such hardship or suffering is of a sort ordinarily incident to incarceration.

        (iii)    The loss of caretaking or financial support is one for which no effective remedial or ameliorative programs reasonably are available, making the defendant's caretaking or financial support irreplaceable to the defendant's family.

        (iv)    The departure effectively will address the loss of caretaking or financial support.

U.S.S.G. § 5H1.6 cmt. n.1.  This guideline provision is a policy statement.  See United States v. Medina-Rodriguez, 348 F.App'x 396, 398 n.3 (10th Cir. 2009)(unpublished).  This policy statement is one of the "category [of] specific offender characteristics that Congress directed the Commissions to take into account in the guidelines only to the extent that they have relevance to sentencing."  U.S. Sentencing Guidelines Manual part H introductory cmt. (2011).  A district court may also rely on the existence of family ties and responsibilities in varying downward on a defendant's sentence.  See United States v. Munoz-Nava, 524 F.3d 1137, 1148 (10th Cir. 2008).

## ANALYSIS

There being no disputes about the PSR's factual findings, the Court adopts them as its own. Given that the United States has identified legitimate evidentiary problems that would potentially prevent it from proving that an enhancement under U.S.S.G. § 2K2.1(b)(6) applies, the Court will accept the parties' stipulation that the enhancement does not apply.  Because Salazar has family ties and responsibilities that take his case out of the heartland of cases, the Court will depart downward 3 levels on his offense level.  The Court will not vary downward on his sentence beyond the parties' stipulated downward variance, because the Court believes the factors in 18 U.S.C. § 3553(a) do not counsel in favor of a greater variance.

**I.    THE COURT WILL ACCEPT THE PARTIES' STIPULATION THAT AN ENHANCEMENT DOES NOT APPLY UNDER U.S.S.G. § 2K2.1(b)(6).**

The United States has identified some legitimate concerns that counsel in favor of the Court accepting the parties' stipulation that a 4-level enhancement does not apply under U.S.S.G. § 2K2.1(b)(6). The only witnesses at the scene appear to have been: (i) Salazar; (ii) Glover; and (iii) the individuals who burglarized the vehicle.  It appears that the individuals who burglarized the vehicle are unknown individuals.  Nor does it appear that they are likely to identify themselves to

law enforcement given that they appear to have been committing a crime. Thus, the only accessible witnesses to the incident are Salazar and Glover, neither of whom would likely be inclined to present evidence supporting an enhancement under this guideline. The United States recognizes that some of the physical evidence at the scene supports the conclusion that Salazar fired shots at the individuals burglarizing the vehicle but indicates that these individuals never fired at Glover or Salazar. That evidence, however, is not before the Court or discussed in the PSR. Salazar asserts, however, that he fired shots only after the individuals fired shots at Glover. He would have a plausible self-defense argument to establish that he was justified in using force and thus did "not use[] or possess[] any firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6). The United States has reached a reasonable conclusion that it would have difficulty proving that this enhancement applies. The United States bears the burden to prove that enhancements apply by a preponderance of the evidence. See United States v. Manatau, 647 F.3d 1048, 1054 n.2 (10th Cir. 2011)(noting that the preponderance-of-the-evidence standard applies during sentencing). Additionally, "[t]he Court must rely heavily on the United States and its ability to assess the strength of its case." United States v. Padilla, No. 09-3598, 2011 WL 6831673, at *5 (D.N.M. Dec. 19, 2011)(Browning, J.). The Court believes the United States has reasonably evaluated its ability to prove this enhancement applies and reasonably concluded that it cannot prove that the enhancement applies, which apparently convinced it to enter into the stipulation. Consequently, the Court believes it is proper to accept the parties' stipulation that a 4-level enhancement under U.S.S.G. § 2K2.1(b)(6) does not apply.

## II.   THE COURT WILL DEPART DOWNWARD 3 LEVELS ON SALAZAR'S OFFENSE LEVEL UNDER U.S.S.G. § 5H1.6.

The Sentencing Commission has advised courts in applying departures:

> The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.

U.S. Sentencing Manual ch. 1 pt. A.4(a), at 6 (2011). The application note to U.S.S.G. § 5H1.6 recognizes that a court should consider the following factors when deciding whether to grant a departure for family ties and responsibilities:

> (A)   In determining whether a departure is warranted under this policy statement, the court shall consider the following non-exhaustive list of circumstances:
>
>    (i)   The seriousness of the offense.
>
>    (ii)  The involvement in the offense, if any, of members of the defendant's family.
>
>    (iii) The danger, if any, to members of the defendant's family as a result of the offense.
>
> (B)   . . . A departure under this policy statement based on the loss of caretaking or financial support of the defendant's family requires, in addition to the court's consideration of the non-exhaustive list of circumstances in subdivision (A), the presence of the following circumstances:
>
>    (i)   The defendant's service of a sentence within the applicable guideline range will cause a substantial, direct, and specific loss of essential caretaking, or essential financial support, to the defendant's family.
>
>    (ii)  The loss of caretaking or financial support substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant. For example, the fact that the defendant's family might incur some degree of financial hardship or suffer to some extent from the absence of a parent through incarceration is not in itself sufficient as a basis for departure because such hardship or suffering is of a sort ordinarily incident to incarceration.
>
>    (iii) The loss of caretaking or financial support is one for which no effective remedial or ameliorative programs reasonably are available, making the defendant's caretaking or financial support irreplaceable to the defendant's family.

        (iv)    The departure effectively will address the loss of caretaking or financial support.

U.S.S.G. § 5H1.6 cmt. n.1.

The Court believes that Salazar's family ties and responsibilities are such that his situation falls outside the heartland of cases. While many defendants whom the Court sentences to a term of imprisonment have young children, Salazar's particular circumstances have factors not present in other cases. As the Court has held in previous cases: "Circumstances that might justify a departure would include a situation where the young child has serious health problems and requires constant care." United States v. Justice, No. 09-3078, 2012 WL 394455, at *11 (D.N.M. Jan. 23, 2012)(Browning, J.). Those circumstances are present here. As the Court has also previously stated: "Another [circumstance that would justify a departure] would be if there was no mother or other family members present to care for the child, and a lengthier term of incarceration would result in the father losing custody of the child to the state permanently." United States v. Justice, 2012 WL 394455, at *11. While it does not appear that Salazar or Glover would lose custody of the child if Salazar were to go to prison, it appears there are significant problems whether other family members could care for Fernando given that he requires significant and constant care. In a prior case, the Court permitted a downward departure under this guideline where the defendant had a daughter and a grandchild with severe health problems, both of whom required significant attention and could not live alone. See United States v. Martinez, No. 09-3078, 2011 WL 6828055, at *5 (D.N.M. Dec. 19, 2011)(Browning, J.). Additionally, the daughter's father was a severe alcoholic who was unable to care for children, and the defendant had no family members living in or near New Mexico. See United States v. Martinez, 2011 WL 6828055, at *5. That case is factually similar to the present one and supports the application of a downward departure.

Additionally, the factors listed in the application note to U.S.S.G. § 5H1.6 counsel in favor of a departure. First, this offense is less serious than many of the offenses before the Court given that it is largely a status offense and Salazar's conduct appears to have physically injured no one. Second, given that the offense was a status offense based on Salazar's status as a felony, no other family members were involved in the commission of the offense. Third, Salazar was arguably protecting Glover from danger by using the firearm rather than putting her in danger, particularly given the parties' stipulation that an enhancement under U.S.S.G. § 2K2.1(b)(6) does not apply.

Fourth, the USPO has recognized that Salazar's imprisonment "will cause a substantial, direct, and specific loss of essential caretaking, or essential financial support, to the defendant's family," specifically to Fernando and Glover. U.S.S.G. § 5H1.6 cmt. n.1. Fifth, given Fernando's unique medical condition, this "loss of caretaking or financial support substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant." U.S.S.G. § 5H1.6 cmt. n.1. Sixth, given the level of care Fernando requires and the lack of other family members who can fill the role Salazar plays, there appears to be "no effective remedial or ameliorative programs" that are reasonably available. U.S.S.G. § 5H1.6 cmt. n.1. Seventh, the departure "effectively will address the loss of caretaking or financial support." U.S.S.G. § 5H1.6 cmt. n.1.

While Salazar ultimately seeks a sentence of probation, the Court does not believe that a departure of more than 3 offense levels is appropriate. The Court should not depart to a specific level to achieve a specific result, but should depart an amount that reflects the applicable factors governing that basis for departure. Cf. United States v. Vigil, No. 04-0444, 2005 WL 3662908, at *3 (D.N.M. Nov. 16, 2005)(Browning, J.)("The Commentary states that the court should accept a specific sentence 'only' if 'the sentence departs from the applicable guideline range for justifiable reasons (i.e., that such departure is authorized by 18 U.S.C. § 3553(b). . . .'"). Thus, the Court will

depart downward 3 levels on Salazar's offense level.

### III. THE COURT WILL NOT VARY DOWNWARD ON SALAZAR'S SENTENCE BEYOND THE AMOUNT TO WHICH THE PARTIES HAVE STIPULATED.

After the Court has granted the 3-level downward departure, the offense level is 18. An offense level of 18 and a criminal history category of II yields a guideline imprisonment range of 30 to 37 months. The Court adopts the sentencing calculation in the PSR as its own other than with respect to the departure the Court granted under U.S.S.G. § 5H1.6.

The Court notes that Salazar possessed a Glock handgun model 31, .357 magnum and is a convicted felon. The Court has carefully considered the parties' arguments and the circumstances of this case. The Court has considered the guideline range for the applicable category of offense committed by the applicable category of defendant. The Court believes that the punishment that the guidelines set forth is not appropriate for Salazar's offense, but will not vary downward further than the variance to which the parties have stipulated. The United States has agreed to "recommend that the Defendant receive a downward variance to account for the time between the date of the offense, August 18, 2010, and the date of the initial setting of the Defendant's sentencing hearing." Plea Agreement ¶ 8, at 3. Between 19 to 20 months have passed since August 18, 2010, and the Court conducted the sentencing hearing on April 11, 2012. The United States estimated at the sentencing hearing that this amount of time was 19 months and 7 days, but that amount of time is actually closer to 19 months and 24 days -- almost 20 months. Taking into account that period of time, a variance to a sentence of 10 months is appropriate. The Court notes that Salazar has already received a sentence of 18-months probation in state court for some of the same underlying conduct, which makes the Court more comfortable with accepting the parties' stipulated downward variance. The Court does not believe, however, that a further variance is appropriate. Salazar engaged in violent

conduct during the commission of his crime by firing the weapon at individuals outside his home. This federal conviction will also be his fourth felony conviction, although one of those felony convictions arose out of the same underlying criminal conduct. As part of the underlying conduct for one of his prior felony convictions, he discharged a firearm. See PSR ¶ 31, at 9-10. It does not appear that the State has required Salazar to serve any time in incarceration for these felony convictions. Salazar is only thirty-years old and already has four felony convictions. Those circumstances, particularly the number of felony convictions Salazar now has and that he has engaged in violent conduct in some of these convictions, trouble the Court and counsel against a sentence of probation, even though Salazar has already received a conviction in state court for the same underlying conduct and will now receive a federal felony conviction. Additionally, the Court has already taken into account Salazar's family ties and responsibilities by departing downward under U.S.S.G. § 5H1.6, so there is no need to vary downward further on that ground. Ten-months incarceration is not such a long period of time that the Court believes it will interfere with providing for Fernando. Nevertheless, the Court believes a sentence of 11-months imprisonment, which the United States has requested, does not appropriately reflect the 18 U.S.C. § 3553(a) factors. Salazar appears to have been shooting a firearm potentially in self defense, or at least in defense of his property against criminal conduct. Furthermore, no one appears to have been injured as a result of this offense. Likewise, he is receiving two felony convictions for the same underlying conduct.

       The Court has considered the guidelines, but, in arriving at its sentence, has taken into account not only the guidelines but other sentencing goals. The Court believes that a sentence of 10 months is appropriate to reflect Salazar's criminal history and the seriousness of Salazar's crime. Other conditions that the Court will require as part of supervised release will also provide Salazar with some needed education, training, and care to prevent these problems from reoccurring. This

sentence adequately reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public, avoids unwarranted sentencing disparities among similarly situated defendants, and otherwise fully reflects each of the factors embodied in 18 U.S.C. § 3553(a). Given that Salazar has effectively received two felony convictions for the same conduct, one in state court and one in federal court, along with two separate sentences, the Court believes that this sentence reflects the seriousness of the offense, promotes respect for the law, provides just punishment, and affords adequate deterrence both to Salazar individually and the public generally. Because Salazar appears to have been shooting a firearm potentially in self defense, or at least in defense of his property against criminal conduct, the Court believes the sentence protects the public, as Salazar appears not to have provoked the incident. Given that Salazar is relatively unique among defendants charged with felon in possession of a firearm in that he has been prosecuted in both state and federal court for the same conduct, the Court believes the sentence avoids unwarranted sentencing disparities among similarly situated defendants. While the Court's task, as a district court, is not to arrive at a reasonable sentence -- it is to come up with one that reflects the factors in 18 U.S.C. § 3553(a), see United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court's job is not to impose a reasonable sentence. Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)." (citation omitted)) -- the Court believes this sentence is reasonable. And perhaps most important in this calculation, the Court believes that this sentence is sufficient without being greater than necessary to comply with the purposes of punishment Congress set forth in the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987 (codified as amended in scattered sections of 18 U.S.C.). The Court sentences Salazar to 10-months imprisonment.

**IT IS ORDERED** that the requests in: (i) the United States' Sentencing Memorandum, filed February 7, 2012 (Doc. 31), are granted in part and denied in part; and (ii) the Defendant's Sentencing Memorandum and Request for a Variance, filed April 2, 2012 (Doc. 35), are granted in part and denied in part. The Court will depart downward 3 levels under U.S.S.G. § 5H1.6. The Court will accept the parties' stipulation to vary downward to account for the time between the date of the offense, August 18, 2010, and the date of the initial setting of Salazar's sentencing hearing. The Court will not, however, vary downward further than a sentence of 10-months imprisonment. The Court sentences Salazar to 10-months imprisonment.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
  United States Attorney
David M. Walsh
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Michael V. Davis
Corrales, New Mexico

    *Attorney for the Defendant*